Argued April 24, affirmed July 16, petition for rehearing denied
August 23, petition for review denied October 23, 1973

STATE OF OREGON, *Respondent, v.* DARRELL
DEAN ROOK (Nos. 37465 and 37466),
*Appellant.*
511 P2d 1245

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the briefs was Gary D. Babcock, Public Defender, Salem.

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

Defendant was separately indicted and jointly tried and convicted on two charges of first degree murder. Former ORS 163.010 (1). He appeals. Prior to this trial he was indicted, tried and convicted of first degree murder arising out of a killing occurring at approximately the same time and place. His conviction thereon was affirmed by this court in *State v. Rook,* 10 Or App 367, 499 P2d 830, Sup Ct *review denied* (1972).

There we said:

"In this case defendant was separately charged

and convicted of the first degree murder of one Sharon Williams. The evidence was that defendant and a companion, who were fugitives from a jailbreak, murdered Sharon Williams and her parents in their home in a remote area of Douglas County while committing an armed robbery. Other charges against defendant and his accomplice were in separate indictments. The murders were brutal and the evidence of defendant's guilt was overwhelming." 10 Or App at 368.

The two indictments here involved charged the defendant with the murders of Mabel Williams and Edward Lyman Williams, the parents of Sharon Williams, referred to in the above quotation.

In this appeal, however, the principal contention urged is the denial of defendant's motion for judgment of acquittal based upon his plea of former jeopardy. Reliance is placed primarily upon *State v. Brown*, 262 Or 442, 497 P2d 1191 (1972), which was decided after the defendant was convicted and sentenced upon the charge of killing Sharon Williams. Although our Supreme Court in *State v. Fair*, 263 Or 383, 502 P2d 1150 (1972), held that *State v. Brown*, supra, was not to be applied retroactively, defendant contends that *Fair* was in effect overruled by *Robinson v. Neil*, 409 US 505, 93 S Ct 876, 35 L Ed 2d 29 (1973), which holds that *Waller v. Florida*, 397 US 387, 90 S Ct 1184, 25 L Ed 2d 435 (1970), is fully retroactive. *Waller* barred on the ground of double jeopardy two prosecutions, state and municipal, based upon the same act or offense. *See also: Ashe v. Swenson*, 397 US 436, 90 S Ct 1189, 25 L Ed 2d 469 (1970).

Defendant now contends that in *State v. Brown*, supra, the court abandoned the historic "same evi-

dence" test as the standard for determining when the double jeopardy clause applies. There the court said:

"* * * We hold, therefore, that under Article I, Section 12, of our constitution, a second prosecution is for the 'same offense' and is prohibited if (1) the charges arise out of the same act or transaction, and (2) the charges could have been tried in the same court, and (3) the prosecutor knew or reasonably should have known of the facts relevant to the second charge at the time of the original prosecution." 262 Or at 457-58.

Defendant contends first that the two murders for which he was here convicted arose "out of the same act or transaction" within the meaning of *Brown* as did the murder of Sharon Williams for which he was first tried and convicted.

He then urges that it follows from *Robinson v. Neil,* supra, that since the double jeopardy provision (Oregon Constitution, Art I, § 12) now applies retroactively under the Fifth Amendment, his plea of double jeopardy should here have been allowed and that these convictions must be vacated. For reasons hereinafter stated we need not decide that question.

In *State v. Gratz,* 254 Or 474, 461 P2d 829 (1969), the Supreme Court considered whether a person could be charged in separate counts in one indictment for the armed robbery of two separate persons committed at the same time and place and as a part of the same transaction. The court said:

"The defendant relies upon *State v. Clark,* 46 Or 140, 80 P 101, wherein this court held that the stealing of several articles belonging to more than one person at the same time and place by one act constitutes but a single offense. This holding is in accord with the weight of authority and is based

on the reasoning that, since there was but one overt act (the theft), a rule to the contrary would lead to incongruous and inhumane results. Anno. 28 ALR 2d 1187, § 3.

"However, in the cases dealing with armed robbery, where the gravamen of the offense is an assault upon and a theft from the person, ORS 163.280, the courts hold that each assault and theft from a different person, although occurring at the same time and place, is a separate crime. * * *

"With few exceptions, not here pertinent, in crimes against the person when contrasted with crimes against property there are as many offenses as individuals affected. And, while it may be said that in armed robbery a single act may put several persons in fear, yet, in order to consummate the crime, that act must be followed by the act of taking from each person money or personal goods. Thus the taking of money or personal goods from one person does not constitute an integral part of the crime committed against another person. * * *" 254 Or at 476-77.

Accordingly, we conclude that the murders of Sharon, Mabel and Edward Lyman Williams each constitute a separate offense. The gravamen of each of the crimes of murder here charged was the deliberate, intentional and unlawful killing of a particular individual. Former ORS 163.010 (1).

Defendant contends, however, that under *State v. Brown,* supra, it was incumbent upon the state to consolidate all three cases for trial, since all three were part of the same transaction, and that its failure to do so entitles him to invoke the double jeopardy rule. (Oregon Constitution, Art I, § 12.)

Consideration of this question requires an understanding of the background out of which it arises.

On November 17, 1971, three separate first degree murder indictments were returned against Rook by the Douglas County Grand Jury. Each indictment charged defendant Rook with the murder of a separate member of the Williams family. The trial court sought to have all three of the murder indictments against defendant Rook, together with a like three brought at the same time against his alleged accomplice, Harnden, consolidated to be tried at the same time. Hearings were held for this purpose and on December 1, 1971, at 9 a.m., defendant Rook and codefendant Harnden were present together with respective counsel before the court. The court announced its desire that all the cases be consolidated for trial. Then

"THE COURT: I assume in the event the plea is entered in Rook, the matter of setting for trial can be argued on both of these cases. What is your pleasure on the order of hearing these cases? Perhaps I should hear argument on the consolidation for trial, first.

"That applies to both of them. In State v. Harnden, the case is at issue, the cases are at issue and are to be set for trial. The Court held open the matter of whether these three cases could be consolidated and tried at the same time, in that they purportedly involve a single transaction and the Court has previously indicated that absent authority to the contrary that these three cases, which in all likelihood would take a week each to try, would be set for trial at the same time, and counsel were given an opportunity to show the Court authorities as to why these cases could not be consolidated for trial. I will hear from the defendant first."

Following this statement, counsel for defendant Harnden made a lengthy argument to the court in opposition not only to consolidation but also to any

joint trial with defendant Rook of the three murder charges against defendant Harnden. Ultimately the court permitted the defendants to be tried separately.

Mr. Rook then entered a plea of not guilty on each of the three indictments brought against him.

The record then shows:

"THE COURT: * * * There is then the matter of setting the cases for trial.

"MR. MURPHY [of defense counsel]: If the Court please, I wonder if we could serve notice with respect to the defense of insanity?

"THE COURT: Certainly. This is the time to do that. The record will then show that at the time of the entry of the plea, the defendant duly filed a written notice of his intent to rely on a defense of insanity in each of the three—excuse me—in two of the cases, 37466 and 65. Did you, by chance, prepare an extra copy so there will be one for each file?

"MR. MURPHY: Yes, Your Honor, we did. I think we did. I think we have tendered those. We have them, Your Honor.

"THE COURT: Now, the matter of setting these cases for trial. * * *

"MR. HEILING [of defense counsel]: Your Honor, we wouldn't necessarily want to be heard separately on the matter of consolidation; however, *we would wish to have one of these certain trials first, separately tried, that being case No. 37467.*
"* * * * * *

"THE COURT: I really don't have enough information about the cases themselves and how they will develop to make an intelligent consideration of the defendant's request for priority. Perhaps you can present the court with some reason that would justify adopting your request.

"MR. HEILING: I believe I can, Your Honor. We have just entered a plea of not guilty to all three counts and then we have entered an alternative notice to enter a plea of not guilty by reason of insanity to 37465 and 66. Now, if we are to have one trial first and then possibly consolidation of the other two trials at a later date, it would be wisest to have the trial that only involves the not guilty plea, and, if there is to be a consolidation, it would be a consolidation of the two cases that are based on the same plea, not guilty and perhaps not guilty by insanity. Perhaps 37465 or 37466 tried first would bring the possibility about that perhaps at a later date we would have a consolidation of one case that involves a not guilty plea and another case that involves a not guilty by reason of insanity. I think for the smoothness of the trial procedure, it would be far better to involve the simplest case first, the one that involves the not guilty plea and the others afterwards, in the event the other cases are consolidated.

"THE COURT: By this device of withholding filing of notice of insanity, you are, in effect, getting separate trials on separate issues; if you see what I mean. It's certainly conceivable that the state of mind could change from one person to the other, I suppose, on the surrounding circumstances, the intervals of time and that sort of thing, but I wonder if this is a good way to proceed, to try out the issue of the actual fact and to try out the state of mind separate. Is this what you are seeking to do by this device?

"MR. HEILING: Perhaps, but, Your Honor, we feel from what we have been able to gather from just talking to the defendant and what little evidence we have been able to gather elsewhere, that there are entirely different facts involved in one case than in the other two. We feel the facts involved in this case, number one, will lay the groundwork that will have to be decided in the decision of the other two cases. We feel there are facts and

circumstances in the case 37467 that lead up to and bear directly on the other two cases and this is another reason why we wish to try 37467 first." (Emphasis supplied.)

The court then allowed defendant's request to try the Sharon Williams case first and separately from the other two. It is entirely clear from the foregoing that the defendant himself was the moving party in the separation of the three cases for trial. It was done at his request and for his sole convenience. Such formal action by a defendant constitutes a waiver of his right, if any, under *Brown* to have had these cases consolidated for trial.

*Brown* holds only that a defendant has a right to have consolidated in one trial all charges which meet the test laid down in that decision. It does not hold that it is error for a trial court to grant a defendant's motion for the separate trial of certain charges arising out of the same transaction when in the discretion of the trial court there appear to be reasonable grounds therefor. Here the defendant asserted he wished to raise the defense of insanity as to two of the murder charges, but not as to the third, and further asked to have the latter tried first. His request was allowed. The court did not abuse its discretion. Such a request made in open court through competent counsel in the presence and with the consent of the defendant, when considered together with defendant's assertion of an insanity plea in these two cases and none in that of Sharon Williams, constituted a valid waiver of the defendant's otherwise undoubted right to have the three cases tried together. The defendant, therefore, cannot now successfully assert the defense of double jeopardy, despite his present con-

tention that had *Brown* and *Robinson* been decided prior to his making of the motion for separate trials he might well have never made the motion. There was no error.

■ The remaining assignments relate to the admission into evidence of a bathrobe worn by Edward Williams at the time of his murder and also a washcloth containing a bloodstain found at the scene of the crime. The contention is that each was gruesome and thus prejudicial. We note first that neither of these exhibits were at all of the type of exhibit criticized by us in our former opinion. *State v. Rook,* supra. Our examination of the exhibits and of the records satisfies us that each was properly admitted as relevant to important issues in the case. *State v. Freeman,* 232 Or 267, 274, 374 P2d 453 (1962), *cert denied* 373 US 919, 83 S Ct 1310, 10 L Ed 2d 418 (1963).

Affirmed.

SCHWAB, C. J., specially concurring.

■ I concur in the majority opinion except that portion which implies that *Robinson v. Neil,* 409 US 505, 93 S Ct 876, 35 L Ed 2d 29 (1973), raises a serious question as to the retroactivity of *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972), which the Oregon Supreme Court held not to be retroactive in its application in *State v. Fair,* 263 Or 383, 502 P2d 1150 (1972).

The decision of the Oregon Supreme Court in *State v. Brown,* supra, was based entirely on Art I, § 12, of the Oregon Constitution. In *State v. Fair,* supra, the question was whether *Brown* would be applied retroactively. The Oregon Supreme Court noted that "since we are dealing with a new principle of law which rests entirely on our own Constitution the

determination of retroactivity or prospectivity is for us alone," 95 Adv Sh at 1658, and concluded *Brown* would not be applied retroactively.

In *Waller v. Florida,* 397 US 387, 90 S Ct 1184, 25 L Ed 2d 435 (1970), the United States Supreme Court, relying on the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, held successive municipal and state prosecutions for the same acts to be unconstitutional. In *Robinson v. Neil,* supra, the United States Supreme Court held its prior decision in *Waller,* and presumably other double jeopardy decisions based on the Fifth Amendment, would be applied retroactively.

The two United States Supreme Court decisions based on the United States Constitution, *Waller* and *Robinson,* in no way affect the two Oregon Supreme Court decisions based on the Oregon Constitution, *Brown* and *Fair.* Accordingly, I would hold that *Robinson* does not in any way overrule *Fair.*

FOLEY, J., joins in this concurring opinion.