SCHWAB, C. J.
Defendant seeks a reversal of one of his convictions for forgery, ORS 165.013, contending that the three false checks which he published at separate times constituted but one crime of forgery.
On May 15, at some time between 6 p.m. and 8 p.m., defendant obtained the authorization of an employe of a Portland supermarket to cash a check falsely purporting to be drawn on the account of an individual from whom the blank check had been stolen. Between two and five horns later that evening the defendant obtained the authorization of the same employe to cash a similar false check, and on May 19 he did the same with still a third check. These forged instruments became the basis of three separate indictments and resulted in three verdicts finding defendant guilty. The trial judge merged for sentencing the convictions on the indictments covering the two May 15 transactions, but over the objection of the defendant, entered a separate order of conviction and imposed a separate sentence under the conviction covering the May 19 incident. Defendant argues that under State v. Welch, 264 Or 388, 505 P2d 910 (1973), the three criminal acts in question constituted but one crime. We disagree.
In Welch:
"At the same time and by the use of one deposit slip, defendant deposited in his bank account two checks purportedly (¿awn in defendant’s favor by a third party on an account in a California bank. Defendant drew the money represented by the checks from his account before his depositing bank learned that the account upon which the checks were purportedly drawn did not exist. He was charged on a separate count for passing each of the two checks. The jury found the checks to be fictitious and known to be so by defendant, who intended to use them to defraud the bank, and convicted him on both counts.” 264 Or at 389.
*[582] The Supreme Court said, 264 Or at 392-94:
"In the present case, we are concerned with ORS 165.115 [predecessor of ORS 165.013[1]
[1]] * * *.
* * * *
The statute is of ancient vintage and no legislative history is available. As in Bell v. United States, supra[2] there is no explicit statement of the unit of the offense. In Bell, the words of the statute were 'whoever * * * transports * * * any woman or girl for the purpose of prostitution * * *.’ As can be observed, the words of the statute now under consideration are no more elightening. In Bell, the Supreme Court of the United States used the following language:
" '* * * When Congress has the will it has no difficulty in expressing it — when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes.’ 349 US at 83-84.
"We are in sympathy with such language and therefore treat the present transaction as encompassing only *[583] one offense. We have to admit that the legislature probably never considered our present problem in adopting the language of the statute. However, if it had considered the problem, we suspect it would have chosen not to impose multiple punishments.”
In Welch both checks were passed at the same time by the use of one deposit slip. Here the third check was passed four days after the first two. Given this distinction, we "suspect” that if the legislature had considered the problem before us it would have chosen to impose multiple punishments.[3]
Affirmed.

ORS 165.013 is the successor to ORS 165.115, which was repealed by Oregon Laws 1971, ch 743, § 432.

 Bell v. United States, 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955).

We need not and do not reach the question of whether the trial judge was correct in merging the two convictions based on the May 15 incidents.