Argued January 8, reversed and remanded February 1, 1973

STATE OF OREGON, *Respondent, v.* FRANCIS
JOSEPH WELCH, *Petitioner.*

505 P2d 910

*F. E. Glenn,* Deputy Public Defender, Salem,
argued the cause for petitioner. With him on the brief
was Gary D. Babcock, Public Defender, Salem.

*Walter L. Barrie,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

HOLMAN, J.

Defendant was convicted on two counts of publishing false checks under ORS 165.115 and was sentenced to four years' imprisonment on each count, the sentences to run concurrently. Defendant appealed and the convictions and sentences were affirmed by the Court of Appeals. 11 Or App 140, 500 P2d 1071 (1972). This court accepted review.

At the same time and by the use of one deposit slip, defendant deposited in his bank account two checks purportedly drawn in defendant's favor by a third party on an account in a California bank. Defendant drew the money represented by the checks from his account before his depositing bank learned that the account upon which the checks were purportedly drawn did not exist. He was charged on a separate count for passing each of the two checks. The jury found the checks to be fictitious and known to be so by defendant, who intended to use them to defraud the bank, and convicted him on both counts.

Defendant raises several questions on review. We consider all of them except one to have been adequately answered by the opinion of the Court of Appeals. We will, therefore, confine our attention to the question which we believe did not receive adequate consideration. Despite the fact that two checks were involved, defendant claims that he was guilty of only one offense and that he can receive only one sentence

because both checks were published simultaneously in one fraudulent transaction.

■ We commence our analysis by deciding that no problem of constitutional magnitude is involved. The legislature may, if it so contemplates, render the passing of each check a separate crime punishable by a separate penalty. In *Gore v. United States*, 357 US 386, 78 S Ct 1280, 2 L Ed 2d 1405 (1958), the petitioner was convicted and sentenced for three separate crimes arising out of a single sale of narcotics. The three charges were: 1) a sale not made pursuant to a written order of a purchaser; 2) a sale not in the original stamped package; and 3) facilitating the concealment and sale of drugs with knowledge that they had been unlawfully imported. The first two charges were violations of separate provisions of the Internal Revenue Code and the last charge was a violation of a provision of the Narcotic Drug Import and Export Act. The Supreme Court of the United States held there that Congress could provide for separate offenses arising out of the same sale and could provide for the imposition of a separate penalty for each offense without violating the constitutional rule against double jeopardy.

The Court further held that whether there was one offense or more than one was a matter of legislative intention and it found in *Gore* that Congress had intended separate crimes and penalties. The Court cited *Bell v. United States*, 349 US 81, 75 S Ct 620, 99 L Ed 905 (1955), which was a case that involved application of the Mann Act—a single provision making it a crime to transport a woman in interstate commerce for the purpose of prostitution. In that case, the Court held that the transportation of more than one woman in a

single transaction was to be dealt with as a single offense because Congress had not explicitly defined the unit of offense and that doubt should be resolved in favor of lenity.

The distinction between double jeopardy and the present situation is tersely stated in Fisher, *Double Jeopardy: Six Common Boners Summarized,* 15 UCLA L Rev 81, 86 (1967), as follows:

"Double jeopardy does not occur unless a man is tried twice; it takes two trials to raise the issue. This is not as obvious as it sounds. Defendants being tried for the first time continually insist that the prosecutor, by joining several overlapping offenses in separate counts in one indictment, is violating the prohibition against double jeopardy. They are even more insistent that they are subjected to double jeopardy when they have been convicted on more than one count and receive cumulative penalties aggregating more than the most severe sentence on one count.

"A defendant may be right in his conclusion that such cumulation of penalties is improper, but he is mistaken in thinking that it is double jeopardy. The true reason why he is right is that double punishment is not permissible under the applicable statutes, *i.e.,* the legislature did not intend him to be sentenced on more than one count * * *."

Similar questions have not been unknown in this state. In *State v. Clark,* 46 Or 140, 80 P 101 (1905), the defendant was charged in one indictment with stealing at the same time and place a mare and a gelding belonging to one person and a gelding belonging to a second person. Defendant demurred to the indictment, contending he had been charged with two crimes by one indictment in that he was charged with taking the property of two persons. This court held that the

stealing at the same time and place of articles belonging to two or more persons constituted one crime, and sustained the overruling of the demurrer.

In *State v. Woolard,* 259 Or 232, 484 P2d 314, 485 P2d 1194 (1971), the question presented was whether a defendant could be convicted and sentenced for the crimes of burglary and larceny arising out of the same criminal conduct. We adopted the test of legislative intent. Applying this test, we decided it was not the legislative intent that a defendant be punished for each crime. The rationale was that the larger penalty for breaking and entering was provided by statute probably because a lawless intrusion is performed with the intent to commit another crime when the intrusion is completed. If this was the reason for the imposition of the greater penalty for burglary, we deemed it inappropriate to impose a separate sentence for larceny because that crime already had been taken into consideration by the legislature in setting the penalty for burglary.

In the present case, we are concerned with ORS 165.115,[1] which read as follows:

"Uttering forged instrument. Any person who, with intent to injure or defraud anyone, knowingly utters, publishes, passes or tenders in payment as true and genuine, any false, altered, forged or counterfeited evidence of debt specified in ORS 165.110, or with such intent, knowingly utters or publishes as true or genuine any false, altered, forged or counterfeited record, writing, instrument or other matter specified in ORS 165.105, shall be punished upon conviction in the manner provided in ORS 165.105."

[1] Repealed by Oregon Laws 1971, ch 743, § 432.

The statute is of ancient vintage and no legislative history is available. As in *Bell v. United States, supra,* there is no explicit statement of the unit of the offense. In *Bell,* the words of the statute were "whoever * * * transports * * * any woman or girl for the purpose of prostitution * * *." As can be observed, the words of the statute now under consideration are no more enlightening. In *Bell,* the Supreme Court of the United States used the following language:

> "* * * When Congress has the will it has no difficulty in expressing it—when it has the will, that is, of defining what it desires to make the unit of prosecution and, more particularly, to make each stick in a faggot a single criminal unit. When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or antisocial conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read. Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." 349 US at 83-84.

We are in sympathy with such language and therefore treat the present transaction as encompassing only one offense. We have to admit that the legislature

probably never considered our present problem in adopting the language of the statute. However, if it had considered the problem, we suspect it would have chosen not to impose multiple punishments.

■ Our present ruling must be distinguished from two related situations concerning the manner in which a defendant is charged and tried. First, there was nothing improper in charging the defendant in two separate counts as was done in this case. The state cannot be forced to choose with which of the checks it will charge defendant. There is always the possibility that the proof might ultimately fail as to one of the checks, and the state should not be deprived of the opportunity of attempting to prove both. 5 Wharton's Criminal Law and Procedure 37, § 1935 (1957 ed) states:

> "It has long been the approved practice to charge, by several counts, the same offense as committed *in different ways* or by different means, to such extent as will be necessary to provide for every possible contingency in the evidence * * *." (footnote omitted; emphasis ours.)

The second related situation which must be distinguished from the present case is the one with which this court dealt in *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972). We there required, with minor exceptions, that all available charges of crime arising out of the same transaction be prosecuted in one case and at the same time. We did so upon the basis that we were interpreting the double jeopardy provision of the Oregon Constitution, Art. I, § 12, to so require. We there reserved the present question of multiple punishments for different aspects of a single act or course of conduct.

The question concerning what constitutes a single

act or transaction is one that is often troublesome. However, in the present case, it is clear that the act of publishing the two checks was a single transaction.

The decisions of the Court of Appeals and the trial court are reversed and the case is remanded to the trial court for the modification of its sentence to provide for only one penalty.