**NOT FOR PUBLICATION**

MAR 22 2010

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DONALD RAY WELLS, | No. 09-35006 |
| Petitioner - Appellant, | D.C. No. 3:06-cv-00018-MA |
| v. | |
| ROSEANNE CAMPBELL; JOAN PALMATEER, Warden, | MEMORANDUM[*] |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the District of Oregon
Malcolm F. Marsh, District Judge, Presiding

Argued and Submitted December 8, 2009
Portland, Oregon

Before: FARRIS, D.W. NELSON and BERZON, Circuit Judges.

Donald Wells, an inmate in the custody of the Oregon Department of

Corrections, appeals the district court's denial of his petition for a writ of habeas

corpus.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

1

## I. Ineffective Assistance Related to the Motion to Suppress Wells's Hospital-Bed Statements

1. Wells fairly presented his ineffective assistance claim to the state post-conviction court. Wells was required to present to the state court the "substantial equivalent" of the claim he presented in federal court. *Lopez v. Schriro*, 491 F.3d 1029, 1040 (9th Cir. 2007). Contrary to the state court's reading of his state petition for post-conviction relief, Wells did not say and could not have meant that trial counsel failed to make *any* motion to suppress the hospital-bed statements; counsel did so move. Instead, Wells's claim was directed at the inadequacy of the motion that trial counsel did file: He alleged that trial counsel was ineffective because he failed to argue that Wells's *Miranda* rights were violated. Wells's state claim thus focused on whether counsel provided inadequate representation with regard to whether Wells's hospital-bed statements were obtained unlawfully, the same general issue raised here.

Moreover, as in *Lopez*, Wells elaborated in the state court on the basis for his IAC claim. In *pro se* supplemental documents that the post-conviction court allowed Wells to file, Wells explained that the suppression motion filed by trial counsel was inadequate because Wells had "asked [trial counsel] to file a motion or

request an evidentiary hearing on the 1985 suppression *to include the Federal suppression . . .* but [he] never did." (Emphasis added.) In his state post-conviction appeal and petition for review, Wells reiterated that his trial counsel "failed to . . . *effectively* argue for suppression" of the hospital-bed statements. (Emphasis added.) The state court record included the federal suppression ruling, because the state appellate court took judicial notice of it on direct review. Wells thus presented to the state courts the "substantial equivalent" of his federal claim. *Lopez*, 491 F.3d at 1040.

2. On the merits, Wells must prove both that counsel's performance was deficient and that the deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Wells satisfies the first prong of *Strickland* because trial counsel's performance "fell below an objective standard of reasonableness." 466 U.S. at 688. Trial counsel, before the retrial, renewed Wells's motion to suppress his hospital-bed statements, but he did not provide any reason for the state court to reconsider the earlier ruling denying suppression. A contrary federal ruling arising from the very same facts, while not conclusive, certainly would have given the state court reason to take a second look. Wells himself stood up before the state trial court and tried to make clear the contention that the court should reconsider its

3

denial of his suppression motion in light of the federal court's subsequent, contrary ruling, but the judge did not understand Wells. Trial counsel did not make any attempt to clarify the point. Then, in the hearing on the renewed suppression motion, trial counsel also failed to make the argument Wells had tried to make; indeed, the transcript suggests he may not have understood that there *was* an earlier federal ruling. The performance of the two lawyers in not making sure the trial judge on retrial knew of the federal ruling was objectively unreasonable.

Wells also satisfies *Strickland*'s second requirement, because he has shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. The respondents contend that the state trial judge, Judge Luukinen, would not have considered Wells's renewed suppression motion even if he had known about the federal ruling by Judge Redden, because Judge Blensly's 1985 denial of Wells's first suppression motion – summarily affirmed on appeal – was law of the case. But Oregon law provides that "[a] motion to suppress which has been denied may be renewed, in the discretion of the court, . . . as the interests of justice require." OR. REV. STAT. § 133.673(2). The Oregon Court of Appeals has interpreted that statute as allowing a defendant to renew a motion to suppress before a new trial even where the appellate court affirmed the initial denial of the motion and ordered

4

a new trial on different grounds. *See State v. Corbin*, 539 P.2d 1113, 1114 (Or. Ct. App. 1975).[1] Thus, Judge Luukinen had discretion to consider Wells's renewed motion.

The existence of a contrary federal ruling applying the same standard,[2] arising from the same facts, would have provided a powerful reason to revisit Judge Blensly's 1985 ruling. Considering that Judge Luukinen was not the same

---

[1] *State v. Custer*, 934 P.2d 455 (Or. Ct. App. 1997), cited by the district court, is not to the contrary. There, the appellate court held only that, where it had remanded for a new trial because evidence should have been suppressed, the trial court had no authority to revisit and deny the defendant's suppression motion at the *state's* request.

[2] Although the Supreme Court held in *Colorado v. Connelly*, 479 U.S. 157, 167 (1986), that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment," Wells's renewed motion to suppress relied not on federal but on Oregon law. The Oregon Court of Appeals did not hold until 2001 that "a suspect's personal characteristics and circumstances as a matter of law cannot alone render statements involuntary." *State ex rel. Juvenile Dep't of Wash. County v. Deford*, 34 P.3d 673, 684 (Or. Ct. App. 2001). Before that, "[t]he test for voluntariness of a confession [was] whether, under the totality of the circumstances, it was the product of an essentially free and unconstrained choice, defendant's will was not overborne and his capacity for self-determination was not critically impaired. . . . The relevant surrounding circumstances include both the character of the accused and the details of the interrogation. . . . No single factor is controlling, and the state has the burden of establishing the voluntariness of the confession." *State v. Davis*, 780 P.2d 807, 808 (Or. Ct. App. 1989) (internal citations omitted); *compare Mincey v. Arizona*, 437 U.S. 385, 401-02 (1978). Thus, Judge Redden's ruling, although made before *Connelly*, could well have been persuasive authority in Oregon state court at the time of Wells's retrial.

judge who had initially denied Wells's motion to suppress, there is a reasonable probability that Judge Redden's persuasive opinion would have convinced him, in the interests of justice, to consider and grant Wells's renewed suppression motion.

3.  Finally, there is a reasonable probability that as to the attempted murder count involving Officer Rawlins (count 3) and the first-degree robbery count involving Violet Yungen (count 1), the outcome of Wells's trial would have been different had his hospital-bed statements been suppressed.  "A defendant's own confession is probably the most probative and damaging evidence that can be admitted against him." *Moore v. Czerniak*, 574 F.3d 1092, 1112 (9th Cir. 2009) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 296 (1991)).  Detective Kohlmeyer's testimony that Wells said he would have killed Officer Rawlins had he remembered to load his gun was extremely damaging.  The only other evidence as to this charge was Officer Rawlins's testimony that Wells, while "about 20, 25 yards away from him," turned to face him, pointed a sawed-off shotgun in his direction, and "jerk[ed]" the gun.  Rawlins did not testify that Wells pulled the trigger, and Wells did not fire any shots at Rawlins, as the gun was not loaded. Notably, the jury acquitted Wells of the attempted murder of Officer Thompson. Although the jury might have convicted Wells of attempted murder of Officer

6

Rawlins based on Rawlins's testimony alone, there is a substantial likelihood that it would not have.

As to the first-degree robbery charge involving Violet Yungen, the only evidence that Wells was armed with a firearm while he was in the store was Detective Kohlmeyer's testimony that Wells told him he had stuffed two guns down his pants.

Thus, Wells has established prejudice as to counts 1 and 3. He has not established prejudice as to the remaining counts on which he was convicted, as the evidence against him on those counts was overwhelming and the confession addressed them in less detail.

## II. Remaining Claims

Wells's remaining claims fail.

1. Wells's claim that the trial court violated his right to due process under the Fourteenth Amendment when it refused to consider his renewed suppression motion is procedurally defaulted. Wells raised no federal constitutional claims on direct appeal, and in his state petition for post-conviction relief he raised only claims of ineffective assistance of counsel.

7

2. Wells's claim that trial counsel provided ineffective assistance by failing to move for severance of the felon in possession charges is also procedurally defaulted. Wells did not raise any severance claim in his state petition for post-conviction relief. Although he did discuss severance in supplemental *pro se* filings, the state post-conviction court permitted supplementation only for purposes of expanding on claims raised in the original petition.

3. The state post-conviction court's holding that trial counsel did not provide ineffective assistance by failing to object to Wells's shackling was not an unreasonable application of *Strickland*. Wells himself did object to the shackling, and the trial court reasonably found that shackling was appropriate given the severity of the offenses with which Wells was charged and given that Wells's leg brace was not visible to the jury.

4. Finally, assuming Wells's federal habeas petition adequately presented the claim that trial counsel was ineffective in failing to argue for merger of sentences with respect to counts 2 and 7, the state post-conviction court's rejection of this claim was not unreasonable. Oregon law applicable at the time of the offense provided that the victim of a robbery is the person against whom a threat is made, *see State v. Dillman*, 580 P.2d 567, 568-69 (Or. Ct. App. 1978), so Officer Thompson was the victim of both robberies. Nonetheless, "[i]t is not necessarily

true that a continuous sequence of criminal acts directed at a single victim can lead to only one sentence." *State v. Kessler*, 686 P.2d 345, 348 (Or. 1984). The two thefts Wells committed reflected different criminal objectives: he stole the pickup truck in an attempt to escape from police with money he had already stolen. *See id.* Thus, the state post-conviction court reasonably determined that Wells had failed to demonstrate prejudice under *Strickland*.

### III. Conclusion

We reverse the judgment of the district court and remand with instructions to grant the writ of habeas corpus as to Wells's convictions on counts 1 and 3. The State shall retry Wells within a reasonable time on those counts or shall vacate the convictions for attempted murder of Officer Rawlins and first-degree robbery of Violet Yungen and resentence Wells to account for the vacated convictions.

REVERSED AND REMANDED.